#27122-a-DG

**2015 S.D. 36**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

    v.

JASON GARREAU,                    Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SIXTH JUDICIAL CIRCUIT
HUGHES COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE JOHN L. BROWN
Judge

\* \* \* \*

MARTY J. JACKLEY
Attorney General

ELLIE J. BAILEY
Assistant Attorney General
Pierre, South Dakota                    Attorneys for plaintiff
    and appellee.


PATRICIA A. CARLSON
Pierre, South Dakota                    Attorney for defendant
    and appellant.

\* \* \* \*

CONSIDERED ON BRIEFS
ON MARCH 23, 2015
OPINION FILED **05/27/15**

#27122

GILBERTSON, Chief Justice

[¶1.]         Jason Todd Garreau appeals the circuit court's imposition of a 25-year sentence for his conviction on one count of attempted first-degree murder. Garreau asserts his sentence violates the Eighth Amendment's prohibition against cruel and unusual punishment. He also asserts the circuit court violated his due process rights in considering a federal presentence investigation report that was included in the state presentence investigation report. Finally, Garreau asserts he was denied his right to counsel and right against self-incrimination during the court services interview in violation of the Fifth and Sixth Amendments. We affirm.

**Facts and Procedural History**

[¶2.]         On October 30, 2013, Garreau borrowed a vehicle from his friend, Jason Mahto, to travel from Pierre to Fort Thompson. Mahto had active warrants. Although Garreau asserts his physical appearance is substantially different from that of Mahto, law enforcement apparently believed Garreau to be the owner of the vehicle and attempted to initiate a traffic stop before Garreau left Pierre. Rather than comply, Garreau led law enforcement on a high-speed chase through the City of Pierre, ignoring traffic signs, disregarding other motorists, and even driving on a sidewalk in order to evade a law enforcement roadblock. Garreau continued eastbound out of Pierre on highway 34, travelling at speeds in excess of 95 miles per hour.

[¶3.]         While fleeing from law enforcement, Garreau called his cousin, John. John intercepted Garreau on the highway, produced a firearm, and opened fire on the U.S. marshals in pursuit. At some point during the chase, John turned down a

-1-

gravel road, while Garreau continued along the highway. The marshals abandoned their pursuit of Garreau and instead pursued John. The chase culminated in an exchange of gunfire in which law enforcement officers shot and wounded John. Garreau drove another few miles, abandoned his vehicle, and continued on foot into Fort Thompson. Garreau was on the phone with John when he was shot. Garreau later learned that John died as a result of his wounds.

[¶4.] Garreau returned to Pierre by the following day. Upon his return, Garreau armed himself with two firearms and went into hiding in a friend's mobile home. Law enforcement learned of his location and surrounded the home at approximately 3:45 p.m. on October 31, 2013. Garreau barricaded himself in the bathroom and sat in the bathtub. Law enforcement officers were unable to convince Garreau to surrender. Garreau persisted in his refusal to surrender, and law enforcement employed gas canisters, flash bombs, and a robot. At approximately 7:45 p.m., the SWAT team entered the home. Garreau, still positioned in the bathtub with the bathroom door closed, opened fire with his weapons through the door and walls as he heard law enforcement approach. Garreau shot Officer Cole Martin in the chest. Fortunately, Officer Martin's body armor spared him from serious injury. Officer Martin Waller also sustained injuries as an indirect result of Garreau's gunfire.[1] The standoff lasted another four hours before Garreau finally surrendered.

---

1. The exact nature of Officer Waller's injury is unclear. The presentence investigation report indicates he was struck by shrapnel in the leg. Garreau asserts the officer was injured by jumping out a window to evade his gunfire.

[¶5.] Garreau was indicted on two counts of attempted first-degree murder in violation of SDCL 22-4-1, SDCL 22-16-4(1), and SDCL 22-16-12. Garreau entered into a plea agreement with the State. Under the terms of that agreement, Garreau pleaded guilty to the attempted murder of Officer Martin, and the State dismissed the second count for the attempted murder of Officer Waller. Additionally, the State agreed to limit its sentencing recommendation to 20 years. The circuit court sentenced Garreau to the maximum term of 25 years.

[¶6.] Prior to sentencing, Garreau filed objections to the presentence investigation report. In particular, Garreau objected to the inclusion of the federal presentence investigation report in the state presentence investigation report. Garreau also objected to being denied counsel at his presentence interview with court services. The circuit court denied the motions, and Garreau appeals. He raises three issues:

1. Whether his sentence violates the Eighth Amendment's prohibition against cruel and unusual punishment.

2. Whether the inclusion of the federal presentence investigation report in the state presentence investigation report violated due process.

3. Whether he was improperly denied counsel during his interview with court services.

### Standard of Review

[¶7.] We generally review a circuit court's decision regarding sentencing for abuse of discretion. *See State v. Buchhold*, 2007 S.D. 15, ¶ 17, 727 N.W.2d 816, 821. However, in reviewing a challenge to a sentence under the Eighth Amendment, we have consistently applied Justice Kennedy's analysis from his concurrence in *Harmelin v. Michigan*, 501 U.S. 957, 111 S. Ct. 2680, 115 L. Ed. 2d 836 (1991)

(plurality opinion). *See State v. Bonner*, 1998 S.D. 30, ¶ 16, 577 N.W.2d 575, 580.

Therefore, "when a defendant challenges a sentence on Eighth Amendment

grounds, our review is conducted using the gross disproportionality standard"

instead of the abuse of discretion standard. *See Buchhold*, 2007 S.D. 15, ¶ 17, 727

N.W.2d at 821.

### Analysis and Decision

[¶8.]       *1.      Whether Garreau's sentence violates the Eighth
                    Amendment's prohibition against cruel and unusual
                    punishment.*

[¶9.]       Garreau asserts that a sentence of 25 years is grossly disproportionate

to the circumstances of the crime to which he pleaded guilty. "The Eighth

Amendment does not require strict proportionality between crime and sentence.

Rather, it forbids only extreme sentences that are *grossly* disproportionate to the

crime." *Bonner*, 1998 S.D. 30, ¶ 15, 577 N.W.2d at 579 (emphasis added) (quoting

*Harmelin*, 501 U.S. at 1001, 111 S. Ct. at 2705 (Kennedy, J., concurring)) (internal

quotation marks omitted). "[T]o assess a challenge to proportionality we first

determine whether the sentence *appears* grossly disproportionate." *Id.* ¶ 17, 577

N.W.2d at 580 (emphasis added). To answer this threshold question, we consider

"the gravity of the offense and the harshness of the penalty." *Solem v. Helm*, 463

U.S. 277, 290-91, 103 S. Ct. 3001, 3010, 77 L. Ed. 2d 637 (1983), *quoted in State v.

Guthmiller*, 2003 S.D. 83, ¶ 43, 667 N.W.2d 295, 309. This comparison rarely "leads

to an inference of gross disproportionality[,]" *Bonner*, 1998 S.D. 30, ¶ 27, 577

N.W.2d at 582 (quoting *Harmelin*, 501 U.S. at 1005, 111 S. Ct. at 2707 (Kennedy, J.,

concurring)) (internal quotation mark omitted), and typically marks the end of our

review, *id.* ¶ 17, 577 N.W.2d at 580. "[I]ntrajurisdictional and interjurisdictional

analyses are appropriate only in the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." *Harmelin*, 501 U.S. at 1005, 111 S. Ct. at 2707 (Kennedy, J., concurring); *see also Bonner*, 1998 S.D. 30, ¶ 17, 577 N.W.2d at 580.

[¶10.] Garreau's sentence of 25 years imprisonment is the maximum sentence permitted by statute for this offense but substantially less than the maximum punishment assigned to the most egregious crimes in this state. Garreau pleaded guilty to attempted first-degree murder. Attempted first-degree murder occurs when one human being attempts the unlawful, premeditated killing of another and "does any act toward the commission of the crime, but fails or is prevented or intercepted in the perpetration of that crime[.]" SDCL 22-4-1, -16-1, -16-4(1). While first-degree murder is a Class A felony, which carries a sentence of death or mandatory life imprisonment, an attempted first-degree murder is a Class 2 felony, which carries a maximum sentence of only 25 years imprisonment. SDCL 22-4-1, -6-1, -16-12. Other sentences authorized by the Legislature include nonmandatory life imprisonment, SDCL 22-6-1(3) (Class C felonies), and 50 years imprisonment, SDCL 22-6-1(4) (Class 1 felonies). Thus, Garreau's sentence is far from "the most severe punishment that the State could have imposed on any criminal for any crime." *See Solem*, 463 U.S. at 297, 103 S. Ct. at 3013.

[¶11.] Consistent with Garreau's sentence, the gravity of his offense is relatively great. The crime to which Garreau pleaded guilty was the *attempt* to commit first-degree murder. Therefore, our analysis must focus on the seriousness of the attempt. However, because the punishment assigned to an attempt relies on

the nature of the target offense, *see* SDCL 22-4-1, it stands to reason that the seriousness of an attempted criminal act also relies, in part, on the gravity of the target offense. It is axiomatic that the unlawful, premeditated killing of one person by another—an act Garreau nearly completed—is one of the most egregious acts contemplated by our criminal justice system. Here, Garreau took shelter in a mobile home and refused to cooperate with law enforcement for four hours before law enforcement entered the home. He waited, armed with a handgun and a shotgun, until he heard Officers Martin and Waller. After he was aware of their presence, Garreau indiscriminately opened fire with both weapons in the officers' direction. A bullet from Garreau's weapon actually struck Officer Martin in the chest. Thus, not only did Garreau commit "any act toward the commission of the crime," SDCL 22-4-1, he potentially committed all acts necessary for the crime—but for Officer Martin's body armor, Garreau's bullet would have inflicted a potentially-life-threatening injury on Officer Martin.

[¶12.] In conducting the threshold comparison between the crime and the sentence, we also consider other conduct relevant to the crime. *Bonner*, 1998 S.D. 30 ¶ 17, 577 N.W.2d at 580. Although Garreau ultimately pleaded guilty to the attempted first-degree murder of Officer Martin, Garreau's actions on October 30 and 31, 2013, placed a number of lives at risk. He led law enforcement on a dangerous chase through the City of Pierre, ignoring traffic laws, disregarding the safety of other motorists, and even driving on a sidewalk to evade the police. He fled the city and enlisted the assistance of his cousin, even though Garreau later admitted that he suspected his cousin was under the influence of

methamphetamines at the time. Garreau hid in a friend's home and refused to cooperate with law enforcement for eight hours.

[¶13.]     We conclude Garreau's 25-year sentence is not grossly disproportionate to his crime. This was a violent offense that occurred at the culmination of two days' worth of bad decisions on Garreau's part. This was not an attempt that was intercepted at an early stage, prior to Garreau posing a substantial risk to his victim; rather, Garreau failed in his attempt probably because of the intervention of Officer Martin's body armor. Therefore, we will not conduct inter- and intrajurisdictional analyses; the objected-to sentence falls within the constitutional prescriptions of the Eighth Amendment.

[¶14.]     2.     *Whether the inclusion of the federal presence investigation report in the state presentence investigation report violated due process.*

[¶15.]     The federal government charged Garreau with 19 counts in relation to the events that occurred on October 30, 2013. The federal government later dismissed 17 of these, and Garreau pleaded guilty to the remaining two charges: assaulting, resisting, and impeding a federal officer; and discharge of a firearm during a crime of violence. Although these two remaining charges related to conduct occurring on October 31, the federal report also included a description of the pursuit and shooting of Garreau's cousin from October 30. Because the State only charged Garreau in connection to the standoff of October 31—not the high-speed pursuit of October 30—and because Garreau was not present at the shooting of John, Garreau asserts "the inclusion of the federal report and its consideration by the state court was highly prejudicial to his case and sentencing." He also argues that the federal report contained "facts unrelated to the charges [he] faced[.]"

[¶16.] Garreau's argument is meritless. The only authority Garreau offers is a citation to South Dakota's rules of evidence. According to Garreau, the circuit court should have excluded the federal report from consideration under SDCL 19-12-3 (Rule 403), which governs the exclusion of relevant evidence if prejudicial. However, we have previously noted that "[d]ue process does not require that the scope of information reviewed by the sentencing judge be controlled by the rules of evidence[.]" *State v. Grosh*, 387 N.W.2d 503, 509 (S.D. 1986) (quoting *State v. Ellefson*, 287 N.W.2d 493, 496 (S.D. 1980) (citing *Williams v. New York*, 337 U.S. 241, 69 S. Ct. 1079, 93 L. Ed. 1337 (1949)), *superseded by statute*, 1978 S.D. Sess. Laws ch. 178, § 548, *as recognized in State v. Brammer*, 304 N.W.2d 111, 114 (S.D. 1981)). Instead, "[a] sentencing judge's access to information should be almost completely unfettered in order that he may acquire a thorough acquaintance with the character and history of the man before him." *Id.* (quoting *United States v. Schipani*, 435 F.2d 26, 27 (2d Cir. 1970), *cert. denied*, 401 U.S. 983, 91 S. Ct. 1198, 28 L. Ed. 2d 334 (1971)) (internal quotation marks omitted). "He should have full access to the fullest information possible concerning the defendant's life and characteristics. Information which should be available to the court includes general moral character, mentality, habits, social environment, tendencies, age, aversion or inclination to commit crime, life, family, occupation, and previous criminal record." *Id.* at 508 (quoting *State v. Conger*, 268 N.W.2d 800, 801-02 (S.D. 1978)) (citations omitted).

[¶17.] Here, the circuit court said, "I think that having access to that information in the federal presentence report is valuable in terms of helping to flesh

out and provide information on the individual." We see no reason to disagree with the court. Therefore, the circuit court was not required to exclude "inflammatory facts unrelated to the charges faced by Jason Garreau" in the federal presentence report from its consideration in determining an appropriate sentence.

[¶18.]     3.     *Whether Garreau was improperly denied counsel during his interview with court services.*

[¶19.]     Finally, Garreau asserts that his Fifth and Sixth Amendment rights against self-incrimination and to counsel were violated because, during the presentence report interview, he was "questioned by a court services officer about drug-related suspicions and firearm suspicions, which have nothing to do with the state charge to which the Defendant pled guilty, or any other charge which may have been dismissed." We have held "that a defendant's Fifth Amendment right to remain silent at sentencing is not waived by entering a guilty plea in South Dakota state court." *State v. Garber*, 2004 S.D. 2, ¶ 22, 674 N.W.2d 320, 326. As the United States Supreme Court has noted, "[I]ncrimination does not end 'once guilt has been adjudicated.'" *Id.* ¶ 20, 674 N.W.2d at 325 (quoting *Mitchell v. United States*, 526 U.S. 314, 325, 119 S. Ct. 1307, 1313, 143 L. Ed. 2d 424 (1999)). The reason for this is that a defendant's post-conviction statements may ultimately influence the sentence issued by the circuit court. *Id.* However, in his brief to this Court, Garreau never articulates which statements were compelled beyond a general reference to "statements about drug use and gun possession[.]" Furthermore, he asserts that these statements "*could have* and *may still* result in other charges against [him]." (Emphasis added.) Garreau does not, however, assert that these statements influenced the circuit court in determining his sentence.

[¶20.]     Additionally, if a defendant "desires the protection of the privilege [against self-incrimination], he must claim it or he will not be considered to have been 'compelled' within the meaning of the [Fifth] Amendment." *Id.* ¶ 23, 674 N.W.2d at 326 (quoting *United States v. Monia*, 317 U.S. 424, 427, 63 S. Ct. 409, 410-11, 87 L. Ed. 376 (1943)).  The circuit court advised Garreau of his right against self-incrimination at the change of plea hearing.  Likewise, Garreau's attorney counseled him against answering questions in the presentence investigation interview.  In fact, according to Garreau, he did invoke his right to remain silent when he "refuse[d] to answer more serious questions about fire arms trafficking and drug trafficking[.]"  Thus, Garreau's "statements were not made in the absence of knowledge about his right to remain silent[.]"  *State v. Kauk*, 2005 S.D. 1, ¶ 18, 691 N.W.2d 606, 610 (per curiam).  Furthermore, Garreau acknowledges that, at least as of the date of filing his brief, he was not facing additional charges based on his statements regarding drug use and gun possession.  Thus, based on the limited information presented by Garreau, we cannot conclude that he was compelled to incriminate himself.

[¶21.]     Neither are we convinced that Garreau was entitled to the presence of counsel at the presentence report interview.  According to Garreau, a defendant is entitled to have counsel present "when a court services officer assumes the role of inquisitor digging for information unrelated to the present charges, conviction, or the history of the Defendant."  As we have already noted, a sentencing court is required to acquaint itself with a defendant, *Bonner*, 1998 S.D. 30, ¶ 19, 577 N.W.2d at 580, and should have "almost completely unfettered" information about the

defendant in order to discharge this duty, *Grosh*, 387 N.W.2d at 509. Specifically, but not exclusively, the court should have available information regarding a defendant's "aversion or inclination to commit crime[.]" *Id.* at 508 (quoting *Conger*, 268 N.W.2d at 802). Information relating to other potential criminal conduct—even if uncharged—informs the circuit court on the defendant's inclination to commit crime, and Garreau has not offered any authority to suggest that such information should be limited to that relating to a charged offense.

[¶22.]     We decided similarly in *State v. Kauk*. In that case, the defendant pleaded guilty to third-degree rape and to furnishing alcohol to a person under the age of eighteen. *Id.* ¶ 3, 691 N.W.2d at 607. Because of the defendant's "age, poor health, limited education[,] and illiteracy, [defense counsel] had asked to be present during Court Services' presentence interview[.]" *Id.* ¶ 4, 691 N.W.2d at 607. Court Services conducted the interview without the defendant's counsel present, the defendant made statements indicating a lack of remorse, and defense counsel argued "Court Services' actions constituted a denial of [the defendant's] right to counsel under the state and federal constitutions." *Id.* ¶ 4, 691 N.W.2d at 607-08. We adopted the majority view "that there is no Sixth Amendment right to counsel at a presentence interview." *Id.* ¶ 12, 691 N.W.2d at 609.

[¶23.]     The majority view, as identified in *Kauk*, "focuse[s] primarily on the non-adversarial nature of a presentence interview[.]" *Id.* "[T]he [Sixth Amendment] right to counsel attaches only at critical stages of the *prosecution*." *Id.* ¶ 12, 691 N.W.2d at 609 (quoting *United States v. Leonti,* 326 F.3d 1111, 1119-20 (9th Cir. 2003)). Because the court services officer "'is not an agent of the

prosecution, . . . has no adversarial role in the sentencing proceedings, . . . and acts as a neutral information gatherer for the judge,' the right to counsel does not attach." *Id.* (quoting *Leonti*, 326 F.3d at 1119). Garreau essentially argues that the content of the court services officer's questions alone is sufficient to render the court services officer an adversary. However, Garreau once again offers no authority for this proposition. Even if a court services officer asks a question that may be viewed as contrary to a defendant's interests, "the [court services officer] does not act on behalf of the government[.]" *United States v. Gordon*, 4 F.3d 1567, 1572 (10th Cir. 1993).

[¶24.] Regardless, it is not necessary that we carve out an exception to *Kauk* today and decide whether a defendant has a Sixth Amendment right to counsel "when a court services officer assumes the role of inquisitor[.]" A defendant's Sixth Amendment right to counsel "attaches to *charged* offenses and does not attach to uncharged crimes or factually unrelated charged crimes." *State v. Hoadley*, 2002 S.D. 109, ¶ 26, 651 N.W.2d 249, 256-57 (emphasis added) (citing *Texas v. Cobb*, 532 U.S. 162, 171-72, 121 S. Ct. 1335, 1342-43, 149 L. Ed. 2d 321 (2001)). As noted above, Garreau asserts merely that his statements made during questioning "*could have* and *may still* result in other charges against [him]." (Emphasis added.) Garreau cannot logically argue that his responses in the presentence investigation interview led to the charge to which he pleaded guilty, and his statement necessarily implies that his objected-to statements have not yet resulted in any additional charges. Therefore, Garreau did not have a Sixth Amendment right to have counsel present at the interview.

## Conclusion

[¶25.] The circuit court sentenced Garreau to the maximum available punishment, but not one grossly disproportionate to Garreau's nearly successful attempt to end Officer Martin's life. As Garreau said in his appellate brief, "Undoubtedly, had Jason Garreau surrendered to local law enforcement on October 31, 2013, instead of engaging in a shootout, he would not be serving state time for these crimes." The circuit court did not violate due process in viewing the federal presentence investigation report. Finally, Garreau has not articulated how any alleged violation of his Fifth or Sixth Amendment rights has impacted the case before us. Therefore, we affirm.

[¶26.] ZINTER, SEVERSON, WILBUR and KERN, Justices, concur.