#27447, #27448-a-SLZ

**2016 S.D. 19**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                          Plaintiff and Appellee,

    v.

ROCKY THOMAS TRAVERSIE,                         Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE SUSAN M. SABERS
Judge

* * * *

MARTY J. JACKLEY
Attorney General

JARED TIDEMANN
Assistant Attorney General
Pierre, South Dakota                            Attorneys for plaintiff
                                     and appellee.


BEAU J. BLOUIN
Minnehaha County
 Public Defenders Office
Sioux Falls, South Dakota                       Attorneys for defendant
                                     and appellant.

* * * *

CONSIDERED ON BRIEFS
ON FEBRUARY 16, 2016
OPINION FILED **03/09/16**

ZINTER, Justice

[¶1.] A jury returned guilty verdicts against Rocky Traversie on six counts of kidnapping in the first degree, eleven counts of aggravated assault, possession of methamphetamine, and possession of methamphetamine with intent to distribute. The circuit court entered a judgment of conviction and sentence on six of the counts, and Traversie appeals. We affirm.

## Facts and Procedural History

[¶2.] On February 5, 2014, Sioux Falls Metro Communications received a 911 call from a woman requesting assistance. Police would later identify the woman as Tanya Ross. Tanya told the dispatcher that "we are being held hostage by a family member, please come." The call disconnected and a second 911 call was received a few moments later from Michelle Miller. Miller stated that her neighbors "came pounding on my door, they say they need the cops, I don't know what is going on." The evidence reflects that Tanya and her son, C.D.R., were at Miller's door asking her to call the police. When asked by the dispatcher what was going on, Miller responded, "The brother is going crazy[.]" Miller also told the dispatcher that "the brother" was Rocky Traversie.

[¶3.] C.D.R. then spoke to the dispatcher. He told the dispatcher that Traversie threatened to kill them. C.D.R. also indicated that Traversie "just came inside after he heard us call the police on him, and me and my mom just jumped out a window." C.D.R. indicated that Traversie was still in their residence with C.D.R.'s grandmother and three other children. He stated that his grandmother was "still trapped down there with [Traversie]." C.D.R. indicated that Traversie

was high on methamphetamine. He also indicated that Traversie struck Tanya on the head and struck C.D.R.'s grandmother on the leg with a brick. While C.D.R was on the phone, Miller and Tanya watched outside because Tanya was afraid that Traversie might follow them. They believed Traversie left because his vehicle was no longer parked at the apartment complex.

[¶4.] Police Officers Starr and Hanisch were the first law enforcement officers to arrive. Officer Hanisch made contact with C.D.R.'s grandmother, Diana Ross, who is Traversie's mother. C.D.R. was with Diana, and C.D.R. confirmed that Traversie struck Diana with a brick.

[¶5.] While this conversation was occurring, a third officer, Officer Dunteman, observed that a vehicle matching the description of Traversie's had returned to the parking lot of the apartment complex. When Officer Starr located Traversie and informed him that he would be detained, Traversie punched Officer Starr in the face. Moments later, Traversie punched Officer Dunteman in the face, forcing him to the ground. With these officers temporarily incapacitated, Traversie delivered a series of punches to the face and body of Officer Hanisch. Traversie was subdued after more officers arrived. During his arrest, several baggies containing methamphetamine were found on Traversie's person. The baggies contained three incremental amounts of methamphetamine, consistent with amounts that are typically sold.

[¶6.] In Traversie's subsequent trial, he proposed a jury instruction on kidnapping. The instruction provided definitional detail to the rule that kidnapping cannot occur if the confinement or restraint is only incidental to another crime. The

circuit court denied the instruction, concluding that there was no evidence the assaults were only incidental to the kidnapping. The court explained that the assaults took place in a relatively short period of time compared to the total time of the confinement.

[¶7.] The court sentenced Traversie to three concurrent fifty-year penitentiary terms for the aggravated assaults of the law enforcement officers. The court imposed two concurrent ten-year sentences for the kidnapping of Diana and Tanya Ross. The court imposed a five-year sentence for the aggravated assault of Tanya. Traversie was not sentenced on the remaining counts. The concurrent sentences on each type of offense were to be served consecutively, resulting in a sixty-five year sentence.

[¶8.] On appeal, Traversie challenges his conviction and subsequent sentence, raising the following issues:

1. Whether there was sufficient evidence to convict on the kidnapping charges.

2. Whether the circuit court erred in refusing to give Traversie's proposed jury instruction on kidnapping.

3. Whether there was sufficient evidence to convict on the aggravated assault charges involving the police officers.

4. Whether there was sufficient evidence to convict on the possession with intent to distribute methamphetamine charge.

5. Whether the circuit court's sentence was cruel and unusual in violation of the Eighth Amendment to the United States Constitution.

## Decision

*Sufficiency of the Evidence—Kidnapping*

[¶9.]     Traversie argues that the circuit court should have granted his motion for judgment of acquittal because there was insufficient evidence to establish kidnapping. We review the denial of a motion for acquittal de novo. *State v. Brim*, 2010 S.D. 74, ¶ 6, 789 N.W.2d 80, 83. "The question is whether there is evidence in the record which, if believed by the fact finder, is sufficient to sustain a finding of guilt beyond a reasonable doubt." *State v. Fasthorse*, 2009 S.D. 106, ¶ 6, 776 N.W.2d 233, 236 (internal quotation marks omitted). "[W]e accept the evidence and the most favorable inferences fairly drawn therefrom, which will support the verdict." *Brim*, 2010 S.D. 74, ¶ 6, 789 N.W.2d at 83. "[T]he jury is the exclusive judge of the credibility of the witnesses and the weight of the evidence[,]" and this Court "will not resolve conflicts in the evidence, assess the credibility of witnesses, or evaluate the weight of the evidence." *Id.*

[¶10.]     Traversie was convicted of first-degree kidnapping under SDCL 22-19-1. That statute proscribes "unlawfully confining another person for a substantial period of time . . . [t]o inflict bodily injury on or to terrorize the victim or another[.]" *Id.* Traversie argues that the elements of the statute were not met because any confinement that occurred in this case was merely incidental to the crime of assault.[1] Traversie relies on *State v. Reiman*, 284 N.W.2d 860 (S.D. 1979).

---

1.    Traversie also contends that insufficient evidence was presented suggesting that the family members had been confined within their own home. We reject this contention out of hand. The evidence of confinement was overwhelming.

Traversie correctly points out that under *Reiman*, kidnapping cannot occur if the acts of confinement in the kidnapping are only incidental to another crime. *Id.* at 873. Thus, a defendant cannot be convicted of kidnapping where the only confinement is the "restraint utilized . . . to complete the act of [the underlying offense]." *State v. Lykken*, 484 N.W.2d 869, 876 (S.D. 1992); *see also State v. Reyes*, 2005 S.D. 46, ¶ 41, 695 N.W.2d 245, 258 (reciting what has come to be known as the *Reiman/Curtis* test, which precludes a kidnapping conviction "where the only restraint utilized was that necessary to complete [the underlying offense.]").

[¶11.]        In this case, the court only entered judgment and sentence on the two counts of kidnapping involving Traversie's assault of Diana and Tanya with a brick. Unlike the rape in *Reiman*, those physical assaults did not require any restraint. Therefore, the confinement associated with the kidnappings was not incidental to the assaults. Moreover, even under Traversie's version of the evidence,[2] the confinement that occurred greatly exceeded the period necessary to strike Diana and Tanya with bricks. The evidence was sufficient to support the convictions for kidnapping Diana and Tanya Ross.

*Traversie's Proposed Jury Instruction*

[¶12.]        Traversie argues that the circuit court erred in refusing to give his proposed jury instruction on kidnapping.[3] "[J]ury instructions are adequate when,

---

2.        In his appellate brief, Traversie concedes that the confinement involved a period of "less than forty-five minutes, and likely less than thirty minutes."

3.        The proposed jury instruction provided:

        Any person who

                                                                                (continued . . .)

considered as a whole, they give a full and correct statement of the law applicable to the case." *State v. St. Cloud*, 465 N.W.2d 177, 181-82 (S.D. 1991). "[A] trial court need not instruct on matters that find no support in the evidence." *State v. Huber*, 356 N.W.2d 468, 474 (S.D. 1984).

[¶13.] The circuit court did not abuse its discretion in refusing to give Traversie's proposed instruction on kidnapping. Kidnapping requires confinement of another person for a "substantial period of time," SDCL 22-19-1, and a jury instruction setting forth the two-prong *Reiman/Curtis* test is warranted only where the kidnapping is "incidental" to the underlying crime, *St. Cloud*, 465 N.W.2d at 181. Traversie's proposed instruction would have defined the substantial (rather than incidental) period as "such time period being separate from the commission of any other crime . . . ." *See supra* n.3. The circuit court declined to give the instruction partly because the assaults happened in substantially less time than the period the family was confined. We agree with the circuit court. As previously noted, the assaults took place instantaneously as Tanya and Diana were struck with bricks. Given the nature of these two assaults, and given the length of the undisputed part of the confinement, *see supra* n.2, Traversie's proposed instruction had no support in the evidence.

---

(. . . continued)

1. Unlawfully confines another person for a substantial period of time, such time period being separate from the commission of any other crime, and such confinement being more than minimal or movement within the same premises;

2. to inflict bodily injury on or to terrorize the victim of another is guilty of the crime of kidnapping.

*Sufficiency of the Evidence—Other Convictions*

[¶14.] Traversie argues that the evidence was insufficient to convict on aggravated assault (on the police officers) and possession of methamphetamine with intent to distribute. However, Traversie did not make a motion for judgment of acquittal on these charges. Because sufficiency of the evidence on these charges was not raised below, it is waived for consideration on appeal. *See State v. Gard*, 2007 S.D. 117, ¶ 33, 742 N.W.2d 257, 264 (refusing to consider a defendant's argument that the circuit court erred by not dismissing charges when a motion was not made at trial).

*Cruel and Unusual Punishment*

[¶15.] Traversie argues that his sentence was cruel and unusual in violation of the Eighth Amendment. In reviewing whether a sentence violates the Eighth Amendment, this Court first compares the sentence and offense for gross disproportionality. *State v. Chipps*, 2016 S.D. 8, ¶ 38, ___ N.W.2d ___, ___. If the threshold requirement of gross disproportionality is not met, the analysis under the Eighth Amendment ends. *Id.*

[¶16.] To determine whether a sentence is grossly disproportionate, we examine "the gravity of the offense and the harshness of the penalty." *Id.* (quoting *Solem v. Helm*, 463 U.S. 277, 290-91, 103 S. Ct. 3001, 3010, 77 L. Ed. 2d 637 (1987)). "This comparison rarely 'leads to an inference of gross disproportionality' and typically marks the end of our review[.]" *Id.* (quoting *State v. Garreau*, 2015 S.D. 36, ¶ 9, 864 N.W.2d 771, 774). The Supreme Court has suggested some factors to consider when judging the gravity of an offense, such as violent versus non-

-7-

violent crimes, value of goods stolen, and the level of intent required. *Id.* ¶ 35 (citing *Helm*, 463 U.S. at 292-94, 103 S. Ct. at 3011). "[O]ther conduct relevant to the crime" and sentence enhancements due to recidivism are also relevant considerations. *Id.* ¶ 40 (quoting *Garreau*, 2015 S.D. 36, ¶ 12, 864 N.W.2d at 776). When considering the harshness of the penalty, we examine the penalty's "relative position on the spectrum of all permitted punishments." *Id.* ¶ 35. There is a clear distinction between capital and non-capital punishments, and prison sentences are judged by degree. *Id.* ¶ 37 (citing *Helm*, 463 U.S. at 294, 103 S. Ct. at 3012).

[¶17.]     In this case, Traversie was convicted of numerous serious offenses; i.e. two counts of kidnapping and four counts of aggravated assault (three assaults against police officers and one assault against Tanya). These were violent crimes, officer assaults are especially egregious, and the officer assaults caused some serious injuries. Traversie also used a brick as a weapon in his assault of Tanya. The gravity of these offenses is magnified by the fact that Traversie was previously convicted of aggravated assault and was therefore convicted as a habitual offender. Although kidnapping and assault are not capital offenses, they are very serious and often warrant severe penalties.

[¶18.]     With respect to the harshness of the penalties, kidnapping is a Class C felony. SDCL 22-19-1. Therefore, Traversie faced life imprisonment on each of the six kidnapping counts. However, he was not sentenced on four of the kidnapping counts, and he received two concurrent ten-year sentences on the other two counts. A ten-year prison sentence for two kidnapping convictions is not disproportionately harsh when considering the gravity of the crime of kidnapping.

[¶19.]     We reach the same conclusion on Traversie's aggravated assault convictions.  Aggravated assault on a law enforcement officer is a Class 2 felony, but Traversie's convictions were enhanced to Class 1 felonies due to his habitual offender status.  Thus, each aggravated assault count on law enforcement carried a maximum penalty of fifty years imprisonment, or a total of 150 years.  Although Traversie received a maximum fifty-year sentence for each of the assaults on the officers, the sentences were imposed concurrently, thus totaling fifty years.  Additionally, the five-year sentence for Tanya was a relatively short term considering all potential punishments.  Considering the seriousness of his offenses and the potential harshness of the penalties, these sentences were not grossly disproportionate.  Traversie's sentences did not violate the Eighth Amendment.

[¶20.]     Affirmed.

[¶21.]     GILBERTSON, Chief Justice, and SEVERSON, WILBUR, and KERN, Justices, concur.