#28455-a-JMK
**2019 S.D. 12**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                          Plaintiff and Appellee,

      v.

SHAYLAN J. YEAGER,                               Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE JEFFREY R. CONNOLLY
Judge

* * * *

MARTY J. JACKLEY
Attorney General

QUINCY R. KJERSTAD
Assistant Attorney General
JOHNATHAN STIEN
Legal Intern
Pierre, South Dakota                    Attorneys for plaintiff and
                                        appellee.


JEFFREY J. FRANSEN of
Pennington County Public
 Defender's Office
Rapid City, South Dakota                Attorneys for defendant and
                                        appellant.

* * * *

CONSIDERED ON BRIEFS
ON JANUARY 7, 2019
OPINION FILED **03/06/19**

#28455

KERN, Justice

[¶1.]      Shaylan Yeager pled guilty to second-degree rape pursuant to a plea agreement. The circuit court sentenced him to forty years in the state penitentiary, with five years suspended, to run consecutive to the prison term Yeager is currently serving in Iowa for offenses involving the same victim. Yeager appeals, alleging the sentence was cruel and unusual in violation of the Eighth Amendment and an abuse of discretion. We affirm.

## Facts and Procedural History

[¶2.]      In 2008, Yeager pled guilty to five counts of third-degree sexual abuse in Iowa district court for conduct involving his fourteen-year-old daughter M.Y. The court sentenced Yeager to thirty years in prison in early 2009. In 2016, Yeager's ex-wife contacted the Pennington County Sheriff's Office and reported that Yeager had also abused M.Y. in August 2008 while their family vacationed in the Black Hills. An investigation ensued and, while Yeager was still serving his Iowa sentence, the Pennington County grand jury indicted him for ten counts of rape, sexual contact, and incest.[1] On July 14, 2017, pursuant to a plea agreement, Yeager pled guilty to one count of second-degree rape as defined in SDCL 22-22-1(2)[2] in exchange for

---

1.      Yeager was charged with three counts of second-degree rape, one alternative count of fourth-degree rape, three alternative counts of sexual contact with a child under sixteen years of age and three alternative counts of aggravated incest.

2.      SDCL 22-22-1(2) defines rape as "an act of sexual penetration . . . . [t]hrough the use of force, coercion, or threats of immediate and great bodily harm against the victim or other persons within the victim's presence, accompanied by apparent power of execution[.]"

-1-

dismissal of the remaining nine charges and an agreement that the State would forego future prosecutions in Custer County.

[¶3.] At a subsequent sentencing hearing, the court considered numerous factors when fashioning Yeager's sentence, including: (1) statements from the victim and her mother; (2) Dr. Donald Janz's evaluation of Yeager concluding he posed a low risk of reoffending; (3) protection of the public; (4) Yeager's pre-sentence investigation, including his lack of criminal history; (5) retribution; and (6) the significant lapse of time between the offense and its prosecution. The court sentenced Yeager to forty years in prison with five years suspended and ordered that his South Dakota sentence run consecutive to his prison term in Iowa. Yeager appeals, raising two issues for our review:

1. Whether Yeager's sentence is excessive under the Eighth Amendment.

2. Whether the circuit court abused its discretion in sentencing Yeager.

**Analysis and Decision**

*1. Whether Yeager's sentence is excessive under the Eighth Amendment.*

[¶4.] Yeager asserts that his sentence violates the Eighth Amendment's prohibition against cruel and unusual punishment. U.S. Const. amends. VIII, XIV. "The question whether a noncapital sentence violates the Eighth Amendment requires us to determine de novo whether the sentence imposed is grossly disproportionate to its corresponding offense." *State v. Rice*, 2016 S.D. 18, ¶ 13, 877 N.W.2d 75, 80. To make this determination, we "compare the gravity of the offense—i.e., the penalty's relative position on the spectrum of all criminality—to

the harshness of the penalty—i.e., the penalty's relative position on the spectrum of all permitted punishments." *Id.* (citations omitted). Thus, when comparing Yeager's sentence to other penalties, we are not limited to the range of penalties available for second-degree rape, but rather contemplate its harshness across the sphere of all punishments permitted by the laws of our state. *See id.*, 2016 S.D. 18, ¶ 19, 877 N.W.2d at 82.

[¶5.]        If, after considering those factors, the penalty appears "grossly disproportionate to the gravity of the offense, then we will compare the sentence to those 'imposed on other criminals in the same jurisdiction' as well as those 'imposed for commission of the same crime in other jurisdictions.'" *State v. Chipps*, 2016 S.D. 8, ¶ 38, 874 N.W.2d 475, 489 (quoting *Solem v. Helm*, 463 U.S. 277, 291, 103 S. Ct. 3001, 3010, 77 L. Ed. 2d 637 (1983). "The challenged sentence is cruel and unusual only if these comparisons 'validate the initial judgment that the sentence is grossly disproportionate to the crime.'" *Rice*, 2016 S.D. 18, ¶ 13, 877 N.W.2d 75, 80 (quoting *Helm*, 463 U.S. at 291, 103 S. Ct. at 3010).

[¶6.]        We first review the gravity of Yeager's crime. Rape is a heinous crime, especially so when the victim is the perpetrator's child. In its discussion of the nature of this offense, the United States Supreme Court observed that "[r]ape is without doubt deserving of serious punishment[.]" *Coker v. Georgia*, 433 U.S. 584, 598, 97 S. Ct. 2861, 2869, 53 L. Ed. 2d 982 (1977). It is a "violent crime because it normally involves force, or the threat of force or intimidation, to overcome the will and the capacity of the victim to resist." *Id.* at 597, 97 S. Ct. at 2869. "[R]ape is very often accompanied by physical injury to the [victim] and can also inflict mental

and psychological damage.  Because it undermines the community's sense of security, there is public injury as well."  *Id.*  Child rape "may be devastating in [its] harm."  *See Kennedy v. Louisiana*, 554 U.S. 407, 407, 128 S. Ct. 2641, 2644, 171 L. Ed. 2d 525 (2008).  Based on the enormity of the harm to the victim and the community, the gravity of Yeager's crime is comparatively high when weighed against other criminal acts.

[¶7.]        As to the harshness of Yeager's sentence, the circuit court imposed a forty-year sentence, with five years suspended, to run consecutively with his sentence in Iowa.  Second-degree rape is a felony punishable by up to fifty-years imprisonment, a maximum $50,000 fine, or both.  *See* SDCL 22-6-1(4).  The circuit court's sentence is ten years below the statutory maximum available for the crime, with five additional years of Yeager's sentence suspended.  When viewed on the spectrum of all permitted punishments, which includes the possibility of death for Class A felonies and mandatory life imprisonment for Class A and Class B felonies, Yeager's penalty for raping M.Y. in South Dakota is well below the harshest possible punishment permitted.  Therefore, Yeager's "sentence does not appear to be grossly disproportionate."  *Rice*, 2016 S.D. 18, ¶ 15, 877 N.W.2d at 81.

[¶8.]        Notwithstanding the foregoing, Yeager argues the circuit court's imposition of a forty-year sentence for one offense was cruel and unusual because it was grossly disproportionate to the sentence he received in Iowa for virtually the same criminal conduct.  The Iowa district court imposed a thirty-year sentence upon Yeager for five counts relating to the sexual abuse of M.Y.  Yeager also argues that he was prejudiced by his ex-wife's delay in reporting the offense because if he had

been charged in South Dakota at the same time as his prosecution in Iowa, he could have explored a global plea agreement involving concurrent sentences.

[¶9.] Although Yeager's sentence in South Dakota involves a longer prison term than he is serving in Iowa, his arguments are meritless. Our legislature has vested circuit courts with the authority to hand down consecutive sentences. *See State v. Red Kettle*, 452 N.W.2d 774, 777 (S.D. 1990); SDCL 22-6-6.1 ("If a defendant is convicted of two or more offenses, [the] . . . sentence may . . . run concurrently or consecutively at the discretion of the court."). While harsher than a concurrent sentence, the mere fact that Yeager's sentence was imposed consecutively does not make it grossly disproportionate. Further, Yeager's argument that the delay in reporting somehow prejudiced him because he could have negotiated a more favorable multi-jurisdictional plea agreement is speculative at best.

[¶10.] After weighing the gravity of the offense against the sentence Yeager received, the circuit court did not violate Yeager's constitutional rights when it imposed a sentence within the authorized fifty-year maximum. "If the threshold requirement of gross disproportionality is not met, the analysis under the Eighth Amendment ends." *State v. Traversie*, 2016 S.D. 19, ¶ 15, 877 N.W.2d 327, 332. Accordingly, no further review of Yeager's challenge on Eighth Amendment grounds is warranted.

> 2. *Whether the circuit court abused its discretion in sentencing Yeager.*

[¶11.] Circuit courts exercise broad discretion in imposing sentences and when challenged on appeal they are reviewed for abuse of discretion. *Rice*, 2016 S.D. 18, ¶ 23, 877 N.W.2d at 83. "An abuse of discretion is a fundamental

error of judgment, a choice outside the range of permissible choices . . . ." *Id.* (citations omitted).

[¶12.] "Before sentencing a defendant, the court is to 'acquire a thorough acquaintance with the character and history of the person before it.'" *State v. Diaz*, 2016 S.D. 78, ¶ 47, 887 N.W.2d 751, 765 (quoting *State v. Lemly*, 1996 S.D. 91, ¶ 12, 552 N.W.2d 409, 412). It should consider the defendant's "'general moral character, mentality, habits, social environment, tendencies, age, aversion or inclination to commit crime, life, family, occupation, and previous criminal record[,]' as well as the rehabilitative prospects of the defendant." *State v. Overbey*, 2010 S.D. 78, ¶ 36, 790 N.W.2d 35, 44 (quoting *State v. Blair*, 2006 S.D. 75, ¶ 27, 721 N.W.2d 55, 63).

[¶13.] Yeager claims that his South Dakota sentence should be "struck down" because his convictions in Iowa and South Dakota involve the same course of conduct when analyzed under the "same evidence test" set forth in *State v. Red Kettle*. 452 N.W.2d 774, 775–76 (S.D. 1990). According to Yeager, the crimes he committed in Iowa are too similar to his conduct in South Dakota to allow consecutive sentences.

[¶14.] *Red Kettle* expressed that a "state and federal court may each sentence a defendant for the commission of a *single act* constituting an offense under both state and federal law," but the sentences may only run consecutively when the elements of the state and federal offenses are different. *See id.* at 775 (emphasis added). Yeager's convictions in South Dakota and Iowa did not arise from a single act. Rather, every instance of rape involved different facts and constituted a separate crime, albeit against the same victim. Because the South Dakota rape

conviction involved a separate act from any of the Iowa convictions our decision in *Red Kettle* is inapposite here.

[¶15.] Yeager also argues the circuit court failed to consider mitigating evidence including: his acceptance of responsibility and remorse, the delay in reporting the crimes, and testimony from Dr. Janz that he fell "in the low risk range for sexual recidivism." Based on our review of the sentencing transcript, however, it is apparent that the court considered these and other factors, including the nature of the offense which the court described as "a heinous and disgusting crime."

[¶16.] Generally, we will not disturb a sentence that is within the statutory maximum. *See State v. Talla*, 2017 S.D. 34, ¶ 10, 897 N.W.2d 351, 354. While a consecutive sentence may be harsh, "[t]he South Dakota Legislature has authorized the[ir] imposition . . . ." *See Red Kettle*, 452 N.W.2d at 775. Yeager subjected M.Y. to years of sexual abuse in two different states, which she described to the circuit court as years filled with "suffering and confusion and just pure horror" affecting "every single aspect of [her] life." While the penalty is lengthy, we cannot say the circuit court abused its discretion. We affirm.

[¶17.] GILBERTSON, Chief Justice, and JENSEN and SALTER, Justices, and SEVERSON, Retired Justice, concur.