#29087-a-DG
**2020 S.D. 20**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                              Plaintiff and Appellee,

    v.

KOREY JADE WARE,                                    Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FIFTH JUDICIAL CIRCUIT
BROWN COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE RICHARD A. SOMMERS
Judge

* * * *

JASON R. RAVNSBORG
Attorney General

ERIN E. HANDKE
Assistant Attorney General
Pierre, South Dakota                     Attorneys for plaintiff
                                                    and appellee.


THOMAS L. SANNES
JENNIFER M. JORGENSON of
Delaney, Nielsen & Sannes, P.C.
Webster, South Dakota               Attorneys for defendant
                                                    and appellant.

* * * *

CONSIDERED ON BRIEFS
FEBRUARY 11, 2020
OPINION FILED **04/08/20**

#29087

GILBERTSON, Chief Justice

[¶1.]     A jury found Korey Ware guilty of aggravated assault under SDCL 22-18-1.1(4).  The circuit court sentenced Ware to the South Dakota State Penitentiary for seven years, with execution of the sentence suspended, and placed Ware on probation for three years under terms and conditions set by the court.  Ware appeals arguing that the circuit court erred in denying his motion for judgment of acquittal.  We affirm.

## Facts and Procedural History

[¶2.]     In the early morning of October 6, 2018, Korey Ware[1] went with his girlfriend, Leesa Christenson, to the Zoo Bar in Aberdeen, South Dakota.  Taylor Kwas, Christenson's ex-boyfriend, was also present at the bar.  Kwas had spent the evening with friends at various bars in Aberdeen before stopping into the Zoo Bar by himself.  At some point in the evening, Kwas noticed Christenson and Ware.  Around 1:15 a.m., Ware repeatedly stared in Kwas's direction.  A few minutes later, Ware walked away from Christenson, looking over his shoulder towards Kwas, who then approached Christenson.

[¶3.]     Before Kwas made contact with Christenson, Ware rushed towards Kwas, slammed his beer on the bar, and punched Kwas on the left side of his face.  Kwas had no warning that Ware was moving toward him or that a punch was coming.  The blow to Kwas's jaw was completely unexpected.  After Ware punched him, Kwas stumbled away, but Ware continued after him.  However, Zoo Bar employees stopped Ware and escorted him from the property.

---

1.    At the time, Ware was sheriff-elect of Roberts County.

[¶4.] Kwas remained at the Zoo Bar. He laughed and shook hands with a bartender, but after a few minutes, Kwas asked the bartenders to call law enforcement. The Aberdeen Police Department responded. The officers noticed redness and swelling on Kwas's jaw and asked if he needed an ambulance. Kwas declined and after speaking with the officers, went to his house in Aberdeen.

[¶5.] Officer Cole Kissner spoke with Ware the next day on the phone. Ware said he did not know Kwas personally, but alleged Kwas was making unwanted advances toward Christenson and would not leave her alone. Ware believed he was defending his girlfriend and admitted he should not have punched Kwas and that he was "in the wrong".

[¶6.] The morning after the incident, Kwas felt pain in his face and went to a Sanford Quick Care clinic to seek medical attention. He was redirected to the emergency room where medical staff performed x-rays, tested for a concussion, and administered a CT scan. Kwas was diagnosed with a broken jaw and referred to a surgeon in Sioux Falls.[2]

[¶7.] Dr. Nathan Phillips met with Kwas on October 10, 2018, and confirmed a linear fracture of the mandible. Dr. Phillips observed some slight swelling on the left side of Kwas's face and that Kwas's bite was slightly off. After discussing options with Kwas for fixing the jaw—either surgery or wiring the jaw shut—Kwas elected to have his jaw wired shut.

---

2. Kwas had recently moved to Sioux City, Iowa for a job promotion. Kwas was in Aberdeen on the date of the incident for the purpose of packing his belongings and spending time with friends. Thus, rather than drive to Sioux Falls to the referred surgeon, Kwas sought out an oral maxillofacial surgeon in Sioux City.

[¶8.]     The following day, Dr. Phillips performed the procedure in his office. The procedure took approximately one hour and thirteen minutes and required sedation to immobilize the jaw.  There were no unexpected difficulties or complications.  Kwas's jaw was wired shut for three weeks after the surgery, his mouth was aligned with the use of elastic bands.  The process left Kwas unable to eat solid food for 45 days, and as a result, he subsequently lost 37 pounds.

[¶9.]     On October 23, 2018, a grand jury indicted Ware on alternative counts of aggravated assault (SDCL 22-18-1.1(4)), simple assault (SDCL 22-18-1(1)), and simple assault (SDCL 22-18-1(5)).  Ware pled not guilty to all charges, and a jury trial was set.  The day prior to trial, the State dismissed the two alternative counts of simple assault and proceeded to trial on the felony charge of aggravated assault.

[¶10.]     The two-day jury trial commenced on February 27, 2019 and concluded on February 28, 2019.  The State called Kwas to testify about the incident and the injuries he sustained.  Officer Kissner related the details of the investigation.  Dr. Phillips explained Kwas's jaw injury and treatment.  At the close of the State's case, Ware moved for a directed verdict,[3] which the circuit court denied.  Ware did not call any witnesses in his defense.

[¶11.]     The jury found Ware guilty of aggravated assault.  Following the verdict, Ware moved for judgment notwithstanding the verdict, which the circuit court also denied.  The circuit court sentenced Ware to the South Dakota State Penitentiary for seven years, suspended execution of the sentence, and placed Ware

---

3.     Although Ware moved for a directed verdict, we note that "[m]otions for directed verdict are abolished and motions for judgment of acquittal shall be used in their place."  SDCL 23A-23-1.

on probation for three years under terms and conditions set by the court. Ware appeals the denial of his motion for judgment of acquittal.

## Analysis and Decision

[¶12.] Denial of a motion for judgment of acquittal is reviewed de novo. *State v. Traversie*, 2016 S.D. 19, ¶ 9, 877 N.W.2d 327, 330 (citing *State v. Brim*, 2010 S.D. 74, ¶ 6, 789 N.W.2d 80, 83). On appeal, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Martin*, 2015 S.D. 2, ¶ 13, 859 N.W.2d 600, 606 (quoting *State v. Brende*, 2013 S.D. 56, ¶ 21, 835 N.W.2d 131, 140). The Court "accept[s] the evidence and the most favorable inferences that can be fairly drawn from it that support the verdict." *Id.* (quoting *State v. Carter*, 2009 S.D. 65, ¶ 44, 771 N.W.2d 329, 342). "The jury is the exclusive judge of the credibility of the witnesses and the weight of the evidence[.]" *Traversie*, 2016 S.D. 19, ¶ 9, 877 N.W.2d at 330 (quoting *Brim*, 2010 S.D. 74, ¶ 6, 789 N.W.2d at 83). Therefore, the Court "do[es] not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence on appeal." *Carter*, 2009 S.D. 65, ¶ 44, 771 N.W.2d at 342 (citing *State v. Shaw*, 2005 S.D. 105, ¶ 19, 705 N.W.2d 620, 626).

[¶13.] Ware was convicted of aggravated assault under SDCL 22-18-1.1(4), which provides that "[a]ny person who: . . . [a]ssaults another with intent to commit bodily injury which results in serious bodily injury . . . is guilty of aggravated assault." Serious bodily injury is defined in SDCL 22-1-2(44A) as "such injury as is

grave and not trivial, and gives rise to apprehension of danger to life, health, or limb[.]"

[¶14.] Ware argues that the circuit court erred in denying its motion for judgment of acquittal because the State failed to prove every element of aggravated assault and that no rational trier of fact could have found Ware guilty beyond a reasonable doubt. Specifically, Ware asserts that Kwas's injury does not meet the definition of "serious bodily injury." According to Ware, Kwas's injury was (1) not grave and (2) the injury did not give rise to an apprehension of danger to life, health, or limb. *See* SDCL 22-1-2(44A).

[¶15.] Ware relies on *State v. Janisch*, 290 N.W.2d 473 (S.D. 1980) to support his argument that Kwas's injury did not rise to the level of serious bodily injury. In *Janisch*, the defendant was convicted of aggravated assault, but on appeal, the Court held that the injuries suffered by the victim—"black and blue marks across his head, shoulders, and right thigh"—did not constitute serious bodily injury. *Id.* at 474-75. The Court held that the injuries sustained were "more closely related to the ordinary injuries sustained in any simple assault," and were thus "far below the status of grave." *Id.* at 476. Ware asserts the injury sustained by Kwas is similar, if not less serious, than the injuries in *Janisch*.

[¶16.] However, Ware's reliance on *Janisch* is misplaced. In *State v. Solis*, the Court declared that "*Janisch* has limited precedential value and is explicitly confined to its facts." 2019 S.D. 36, ¶ 31 n.*, 931 N.W.2d at 261 n.*. When *Janisch* was decided, the Legislature had not yet defined "serious bodily injury" and "did not create an evidentiary standard upon which all future injuries are to be compared."

*Id.* Instead, courts reviewing aggravated assault cases must examine each case "on its own facts to determine whether an injury 'is grave and not trivial, and gives rise to apprehension of danger to life, health, or limb' under SDCL 22-1-2(44A)." *Id.* As such, we confirm that *Janisch* is of no current precedential value.

[¶17.] Likewise, the trier of the fact must determine whether the injury, based on the facts of the case, constitutes a "grave and not trivial" injury such that it constitutes serious bodily harm. *See* SDCL 22-1-2(44A). Here, the State presented testimony from Kwas and Dr. Phillips to prove the injury was grave. Kwas testified about his pain, for which he was prescribed hydrocodone, along with the extensive treatment required for his injury. Dr. Phillips explained the risks associated with not treating a broken jaw. He further explained the details of the procedure and treatment, along with the possible life-long health risks that remain even after fixing the jaw.

[¶18.] Ware, on the other hand, notes that Kwas declined an ambulance on the night of the incident, and that after Kwas went to the emergency room the next day, he was able to go out later with friends that same night. Ware further notes that Kwas did not see Dr. Phillips until approximately three days after the incident, and Dr. Phillips's dictation notes described the injury using terms such as "minor," "normal," "minimal," "some swelling," and "slight."

[¶19.] The Court's duty on appeal is to "accept the evidence and most favorable inferences that can be fairly drawn from it [to] support the verdict." *Martin*, 2015 S.D. 2, ¶ 13, 859 N.W.2d at 606 (quoting *Carter*, 2009 S.D. 65, ¶ 44, 771 N.W.2d at 342). This Court will not "resolve conflicts in the evidence, pass on

the credibility of witnesses, or reweigh the evidence." *Carter*, 2009 S.D. 65, ¶ 44, 771 N.W.2d at 342 (citing *Shaw*, 2005 S.D. 105, ¶ 19, 705 N.W.2d at 626). It is the exclusive duty of the jury to judge "the credibility of the witnesses and the weight of the evidence." *Traversie*, 2016 S.D. 19, ¶ 9, 877 N.W.2d at 330 (quoting *Brim*, 2010 S.D. 74, ¶ 6, 789 N.W.2d at 83). In finding Ware guilty of aggravated assault, the jury performed its exclusive duty, and the evidence admitted at trial supported a finding that Kwas's injury was grave and therefore, constituted a serious bodily injury.

[¶20.] Ware also argues that the injury did not rise to the level of serious bodily injury because the surprise punch could not put Kwas in "apprehension of danger to life, health, or limb." SDCL 22-1-2(44A). However, there is no requirement that apprehension of danger to life, health, or limb must occur *prior to* an attack. *See, e.g., State v. Dace*, 333 N.W.2d 812, 822-23 (S.D. 1983) (finding the doctor's diagnosis of a contusion to the kidney gave apprehension of damage to the kidney, which was sufficient evidence to prove serious bodily injury). Further, we have previously accepted that "any time we're talking about an injury to a person's head[,] a real blow to the head . . . there is a fear or an apprehension that the injury can be life long." *State v. Miland*, 2014 S.D. 98, ¶ 14, 858 N.W.2d 328, 331-32 (affirming a conviction of aggravated assault under SDCL 22-18-1.1(1) where the defendant punched a police officer in the face without any warning).

[¶21.] Here, the evidence that Kwas's jaw was broken and required to be wired shut for a month and a half was sufficient to support a verdict for aggravated assault under SDCL 22-18-1.1(4). Additionally, the State offered evidence that the

suddenness of the attack caused Kwas psychological damage, along with his physical injury.  Further, Dr. Phillips testified that even after fixing the jaw, Kwas faced the possibility of ongoing health issues related to his jaw injury.  Ware attempts to minimize this evidence by arguing that there was no apprehension of danger to life, health, or limb because Kwas had no warning of the punch, Kwas himself had to request bartenders call law enforcement because no one made the call, and he did not receive medical attention until the next day.  The jury considered all the evidence and performed its exclusive role when it returned the verdict of guilty for aggravated assault, and there is sufficient evidence to support the verdict.  Therefore, the circuit court did not err when it denied Ware's motion for judgment of acquittal.  We affirm.

[¶22.]        KERN, JENSEN, SALTER, and DEVANEY, Justices, concur.