#27628, #27629-a-DG

2017 S.D. 16

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

(#27628)

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

vs.

RYAN ALAN KRAUSE,                         Defendant and Appellant.


-----------------------------------------------------------------------------------------------------------------

(#27629)

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

v.

BRIAN MICHAEL KRAUSE,                     Defendant and Appellant,


* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
GRANT COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE VINCENT A. FOLEY
Judge

* * * *

ARGUED OCTOBER 5, 2016
OPINION FILED 04/12/17

MARTY JACKLEY
Attorney General

KIRSTEN E. JASPER
Assistant Attorney General
Pierre, South Dakota

Attorneys for plaintiff and appellee.

CHAD C. NELSON
Milbank, South Dakota

Attorney for defendants and appellants.

#27628, #27629

GILBERTSON, Chief Justice

[¶1.] Twin brothers Ryan Alan Krause and Brian Michael Krause appeal the circuit court's imposition of four consecutive, two-year sentences on each brother for multiple convictions of unlawfully using a computer system. The Krauses first argue their sentences violate the Eighth Amendment's prohibition against cruel and unusual punishment. They also argue the circuit court erred by deviating from presumptive sentences of probation for these offenses and in failing to state the aggravating circumstances justifying such deviation. We affirm.

## Facts and Procedural History

[¶2.] In 2014, the Krauses were both employed in information-technology positions in Milbank. Brian worked for Valley Queen Cheese, and Ryan worked for Big Stone Therapies. Valley Queen Cheese had contracted with the Xerox Company to supply toner cartridges. Under the agreement, Xerox maintained ownership of a cartridge even while it was in Valley Queen Cheese's possession. In order to protect its property interest in leased cartridges, Xerox maintains a security division that monitors the internet for the sale of such consumables.

[¶3.] In January 2014, Xerox's security division discovered some of its toner cartridges posted for sale on the internet. The cartridges had been assigned to Valley Queen Cheese and were offered for sale by someone using the email address Brian.Krause1@html.com. Xerox purchased the cartridges and made similar purchases from the same seller in April 2014. Afterward, the seller offered to sell Xerox additional property worth $5,800 for the price of only $600. After this exchange, Xerox notified the Milbank Police Department.

[¶4.] The subsequent investigation uncovered a scheme in which the Krauses stole equipment from both Valley Queen Cheese and Big Stone Therapies and sold it on the internet. An internal investigation conducted by Valley Queen Cheese revealed that approximately $180,000 in equipment had been stolen by the Krauses. The stolen equipment included: toner, toner cartridges, computers, computer monitors, printers, phones, electronic equipment, and other miscellaneous items of inventory. The Krauses had also taken additional electronics from Big Stone Therapies.

[¶5.] In addition to stealing company property, the Krauses also accessed sensitive and private information. On December 27, 2013, the Krauses accessed the restricted database of Valley Queen Cheese's accounting department and copied the 2013 payroll statement, which included the ID numbers, salaries, benefits, accrued leave, bonus payments, mailing addresses, and bank-account numbers of its employees. On July 1, 2014, Brian accessed the email account of the chief financial officer (CFO) and copied an email containing a local businessman's development-loan application, which included the businessman's taxpayer ID number, social security number, underwriting documents, personal financial statement, and business financial statement. On July 23, 2013, Brian accessed the CFO's personal files and copied the personal financial statements of the CFO and the chief executive officer. On May 31, 2013, and February 12, 2014, Brian accessed the CFO's and IT administrator's email accounts and used their information to access the CFO's and administrator's online banking records. In each of the foregoing instances, Brian shared and discussed the information he accessed with Ryan.

[¶6.]       On July 10, 2015, the Krauses entered into identical plea agreements with the State.  The Krauses agreed to pay restitution to Valley Queen Cheese and Big Stone Therapies in the amount of $80,000 and to sign over the title to a jointly owned pontoon boat.  In exchange, the State agreed to limit charges to one count each of grand theft for the property taken and four counts each of unlawfully using a computer system.  The State also agreed to recommend that the sentences for unlawfully using a computer system run concurrent with the sentence for grand theft.  Pursuant to these agreements, the State filed separate complaints against the Krauses on July 14.  Each complaint alleged one count of grand theft under SDCL 22-30A-1 and four counts of unlawfully using a computer under SDCL 43-43B-1(2).

[¶7.]       The Krauses entered guilty pleas to all charges on July 20, 2015, and the circuit court sentenced them on September 15, 2015.  Focusing on punishment and deterrence, the circuit court sentenced each of the Krauses to four years imprisonment for grand theft.  The court also sentenced the Krauses to two years imprisonment for each count of unlawfully using a computer system.  Additionally, the court ordered all sentences run consecutively.

[¶8.]       In this consolidated appeal, the Krauses raise two issues:[1]

> 1.     Whether their consecutive sentences for unlawfully using a computer system violate the Eighth Amendment's prohibition against cruel and unusual punishment.[2]

---

1.     Although the Krauses state three issues in their brief, two of those issues are consolidated in this opinion.  *See infra* ¶ 15 & n.6.

2.     The Krauses do not appeal their sentences for grand theft.

2.      Whether the circuit court erred by imposing sentences of imprisonment instead of probation for the unlawful-use-of-computer-system convictions.

## Analysis and Decision

[¶9.]       *1.      Whether the Krauses' consecutive sentences for unlawfully using a computer system violate the Eighth Amendment's prohibition against cruel and unusual punishment.*

[¶10.]      "We generally review a circuit court's decision regarding sentencing for abuse of discretion." *State v. Rice*, 2016 S.D. 18, ¶ 11, 877 N.W.2d 75, 79 (quoting *State v. Chipps*, 2016 S.D. 8, ¶ 31, 874 N.W.2d 475, 486). "However, when the question presented is whether a challenged sentence is cruel and unusual in violation of the Eighth Amendment, we conduct a de novo review to determine whether the sentence imposed is grossly disproportionate to the offense." *Id.* (quoting *Chipps*, 2016 S.D. 8, ¶ 31, 874 N.W.2d at 486).

[¶11.]      The Krauses argue that their sentences for unlawfully using a computer are grossly disproportionate to the circumstances of their crimes. They contend that the circumstances of their crimes were minor. They also contend their crimes are mitigated because: (1) neither of the Krauses has a substantial criminal record, (2) they cooperated with law enforcement in interviews and by surrendering computer evidence, (3) they immediately enrolled in counseling, and (4) they made restitution prior to sentencing. However, the Krauses' mitigation arguments are entirely irrelevant to an Eighth Amendment analysis. The Supreme Court has rejected individualized sentencing in noncapital cases. *Harmelin v. Michigan*, 501 U.S. 957, 995, 111 S. Ct. 2680, 2702, 115 L. Ed. 2d 836 (1991); *accord Rice*, 2016 S.D. 18, ¶ 18 & n.3, 877 N.W.2d at 81-82 & n.3. Therefore, we simply

determine whether the sentences imposed appear grossly disproportionate to the offenses committed.[3]

[¶12.]    To determine whether a sentence is grossly disproportionate to an offense, we first compare "the gravity of the offense and the harshness of the penalty." *Chipps*, 2016 S.D. 8, ¶ 38, 874 N.W.2d at 488 (quoting *Solem v. Helm*, 463 U.S. 277, 290-91, 103 S. Ct. 3001, 3010, 77 L. Ed. 2d 637 (1983)). "This comparison rarely 'leads to an inference of gross disproportionality' and typically marks the end of our review." *Id.* ¶ 38, 874 N.W.2d at 489 (quoting *State v. Garreau*, 2015 S.D. 36, ¶ 9, 864 N.W.2d 771, 775). "If the penalty imposed appears to be grossly disproportionate to the gravity of the offense, then we will compare the sentence to those 'imposed on other criminals in the same jurisdiction' as well as those 'imposed for commission of the same crime in other jurisdictions.'" *Id.* (quoting *Helm*, 463 U.S. at 291, 103 S. Ct. at 3010).

[¶13.]    The Krauses pleaded guilty to unlawfully using a computer system. Among other instances, this offense occurs when a person "[k]nowingly obtains the use of, accesses, or exceeds authorized access to, a computer system, or any part thereof, without the consent of the owner, and the access or use includes access to confidential data or material[.]" SDCL 43-43B-1(2). This particular variation of the offense violates both property and privacy rights of the victim. As noted above,

---

3.    The Krauses' appellant brief was filed one month after we decided *Chipps* but two weeks before we decided *Rice*. The State relied heavily on both *Chipps* and *Rice* in its reply brief. The Krauses do not address these cases and in fact, chose not to file a reply brief at all. Thus, the Krauses have not requested that their mitigation arguments be analyzed under the discretional dimension of sentencing, and we limit our analysis to the constitutional question of gross disproportionality.

*supra* ¶ 5, the Krauses accessed and discussed payroll data, bank accounts, personal financial statements, email, and other confidential data belonging to a number of people. The Krauses argue that because they did not further disseminate the confidential information they accessed or use it to extort their victims, their crimes are not representative of the most serious of their kind. Yet, the offense for which the Krauses were convicted addresses only *obtaining the use of, accessing*, or *exceeding authorized access to* a computer system, without the consent of the owner, to access confidential data or material. *Id.* The fact that the Krauses could have committed additional crimes but did not do so does not diminish the gravity of the crimes that occurred. Regardless, these crimes already lie on the lower end of the gravity-of-offense spectrum. A two-year sentence correspondingly lies on the low end of the spectrum of punishments. Therefore, considering the property and privacy interests that the Krauses violated, their sentences do not appear grossly disproportionate to their offenses, and our review ends. *See Chipps*, 2016 S.D. 8, ¶¶ 43-45, 874 N.W.2d at 490-91 (upholding five-year sentence of imprisonment for four occurrences of identity theft).

[¶14.]     **2.     *Whether the circuit court erred by imposing sentences of imprisonment instead of probation for the unlawful-use-of-computer-system convictions.***

[¶15.]     Next, the Krauses argue the circuit court erred by deviating from a presumptive sentence of probation. At the time they were sentenced, SDCL 22-6-11 generally required a sentencing court to impose a sentence of probation for the commission of a Class 5 or 6 felony. *State v. Orr*, 2015 S.D. 89, ¶ 9, 871 N.W.2d

834, 837.[4]  Deviation from a presumptive sentence of probation is permitted only if the sentencing court finds aggravating circumstances posing a significant risk to the public that requires such a departure.  *Id.*  The Krauses contend the circuit court's focus on punishment and deterring future offenders does not establish a significant risk to the public sufficient to deviate from the presumptive sentence of probation.[5]  They additionally contend that even if aggravating circumstances were present, the circuit court erred by not stating those circumstances in the judgment of conviction.[6]  The State responds that because the circuit court imposed a sentence of imprisonment on the Krauses for grand theft, SDCL 22-6-11 does not apply to the remaining offenses.

---

4.    The Legislature recently amended SDCL 22-6-11.  2016 S.D. Sess. Laws ch. 137, § 4.

5.    At the sentencing hearing, the court said:

> I don't think rehabilitation is necessary.  I think you have learned your lessons . . . .
>
> . . . .
>
> . . . [T]here needs to be that retribution regardless of how sorry you are and regardless of what steps you have taken, because the message needs to be sent.
>
> . . . .
>
> I need to punish you two for what you did for those invasions of privacy, but also you need to be the tool of the message to be sent, not only here in Milbank, not only in Grant County, not only graduates of Lake Area, but hopefully broader, that when we get you creepers, we punish you.
>
> . . . .
>
> You will be going to the penitentiary, because what you did in the Counts 2 through 5 deserves penitentiary time.

6.    The Krauses stated these two contentions as separate issues in their brief.  Because these issues are related and turn on the same analysis, we address them together.

[¶16.]    We recently reviewed the constitutionality of SDCL 22-6-11 in *State v. Orr*. In that case, a defendant already sentenced to imprisonment in the penitentiary received additional sentences for consecutive penitentiary time and a concurrent term of probation. *Orr*, 2015 S.D. 89, ¶ 2, 871 N.W.2d at 835. The defendant appealed, arguing he could not be subjected to simultaneous supervision by the executive and judicial branches. *Id.* We agreed and held: "The judicial branch cannot give itself authority over offenders that are in the state penitentiary by sentencing a person to simultaneous probation and penitentiary sentences." *Id.* ¶ 10, 871 N.W.2d at 838. Consequently, a "sentencing court cannot grant probation where a defendant receives penitentiary time beyond that authorized by SDCL 23A-27-18.1 and SDCL 23A-27-18.2." *Id.* ¶ 12, 871 N.W.2d at 838.[7]

[¶17.]    The Krauses did not respond to the State's argument and have not offered any analysis on whether *Orr* applies to the present case. We note that *Orr* involved concurrent sentences of imprisonment and probation, whereas the current

---

7.    Subsequent to our decision *Orr*, the Legislature modified SDCL 22-6-11. 2016 S.D. Sess. Laws ch. 137, § 4. That statute now requires a court to impose a sentence of probation for a Class 5 or 6 felony if the offender is not under the supervision of the executive branch; if the offender is under the supervision of the executive branch, the court is required to order a fully suspended penitentiary sentence. SDCL 22-6-11. This change, however, necessarily does not affect our analysis in this case. "[A] statute will not operate retroactively unless the act clearly expresses an intent to do so" or the change is merely procedural and not substantive. *West v. John Morrell & Co.*, 460 N.W.2d 745, 747 (S.D. 1990). "As related to criminal law and procedure, *substantive law* is that which declares what acts are crimes and prescribes the punishment therefor; whereas *procedural law* is that which provides or regulates the steps by which one who violates a criminal statute is punished." *State v. Sylva*, 804 P.2d 967, 969 (Kan. 1991) (quoting *State v. Hutchison*, 615 P.2d 138, 140 (Kan. 1980)). Nothing in the Legislature's act indicates it was intended to operate retroactively. Consequently, because the amendment is a substantive change to the statute, it does not affect the present case.

case involves consecutive sentences. Therefore, this case does not involve the same dual-supervision problem presented in *Orr*. Even so, other statutes also suggest that once the executive branch assumes supervision of an offender, he does not return to the judicial branch for supervised release. By statute, a sentencing court does not have discretion to impose a sentence of probation consecutive to a term of imprisonment. *See* SDCL 22-6-6.1.[8] And while a court can supervise an offender "with an entirely suspended penitentiary sentence" in some cases, it may not do so if "the entirely suspended penitentiary sentence is concurrent or consecutive to an additional penitentiary sentence[.]" SDCL 23A-27-18.4. In such a case, the offender remains under the supervision of the executive branch. *Id.*

[¶18.] In light of the foregoing, it appears the circuit court did not have the authority—let alone an obligation—to sentence the Krauses to probation for their unlawful-use-of-computer-system convictions. As the State correctly points out, the Krauses were each sentenced to a four-year term of imprisonment in the penitentiary for their grand-theft convictions. The Krauses have not appealed these sentences. Thus, because the Krauses were otherwise committed to the supervision of the executive branch, subsequent supervision by the judicial branch was not an

---

8.     SDCL 22-6-6.1 states: "If a defendant is convicted of two or more offenses, . . . the judgment or sentence may be that the *imprisonment* on any of the offenses or convictions may run concurrently or consecutively at the discretion of the court." (Emphasis added.) "[T]he purpose of SDCL 22-6-6.1 is to limit a court's power to impose consecutive sentences to situations described in the statute." *State v. Kramer*, 2008 S.D. 73, ¶ 11, 754 N.W.2d 655, 658 (citing *State v. Arguello*, 1996 S.D. 57, ¶ 7, 548 N.W.2d 463, 464); *State v. Flittie*, 318 N.W.2d 346, 349 (S.D. 1982). The only consecutive-sentencing situation described in the statute is imposing a sentence of imprisonment consecutive to another sentence. Therefore, in its current form, SDCL 22-6-6.1 restrains a court's power to consecutively impose sentences other than imprisonment (e.g., a sentence of probation).

option, and probation was no longer the presumptive sentence under SDCL 22-6-11. Because probation was not the presumptive sentence, the circuit court's decision to impose a penitentiary sentence was necessarily not a deviation from SDCL 22-6-11, and the circuit court was not required to state aggravating circumstances in the judgment of conviction.

## Conclusion

[¶19.]     The sentences the Krauses received for unlawfully using a computer system do not appear grossly disproportionate to the gravity of their offenses; therefore, the sentences are not cruel and unusual.  Because the Krauses were sentenced to imprisonment in the penitentiary, the circuit court was not required or authorized to sentence the Krauses to probation for their unlawful uses of a computer system.  Therefore, the circuit court did not err by imposing two-year sentences of imprisonment for each such conviction.

[¶20.]     We affirm.

[¶21.]     ZINTER, SEVERSON, WILBUR, and KERN, Justices, concur.