#29208-a-MES
**2021 S.D. 21**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                      Plaintiff and Appellee,

    v.

NATALIE MARIE ANGLE,                        Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
LAKE COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE PATRICK T. PARDY
Judge

* * * *

JASON R. RAVNSBORG
Attorney General

ANN C. MEYER
Assistant Attorney General
Pierre, South Dakota                        Attorneys for plaintiff
                                            and appellee.


MANUEL J. DE CASTRO, JR.
Madison, South Dakota                       Attorney for defendant
                                            and appellant.

* * * *

CONSIDERED ON BRIEFS
AUGUST 24, 2020
OPINION FILED **04/07/21**

#29208

SALTER, Justice

[¶1.]     Natalie Marie Angle appeals her convictions for vehicular homicide and driving under the influence, arguing that the circuit court erred when it denied her motion to suppress statements to law enforcement following the accident, which prompted this case. Angle also challenges the sufficiency of the evidence to support her convictions. We affirm.

## Background

[¶2.]     Natalie Angle left her boyfriend's home in Madison at around 5:15 p.m. on December 17, 2018, and was driving her sport utility vehicle (SUV) west on Highway 34 near the small community of Junius when she swerved over the center line and collided with an eastbound pickup driven by James Birgen. An investigation later revealed that Angle's SUV made contact with Birgen's pickup behind the driver's-side door. The force of the impact flipped the pickup onto its side. Birgen was ejected from the truck and was fatally injured.

[¶3.]     Angle's SUV rolled several times and came to rest upright in the south ditch of Highway 34. A truck driver traveling a short distance behind Birgen saw the entire accident, including Birgen being thrown from his pickup. He stopped to render such assistance as he could in the moments before emergency personnel arrived.

[¶4.]     Deputy Grant Lanning with the Lake County Sheriff's Department was the first law enforcement officer to arrive on the scene. After checking Birgen for vital signs and finding none, he approached Angle's vehicle. Deputy Lanning was soon joined by Officer Heath Abraham from the Madison Police Department,

-1-

and the two visited with Angle in an effort to keep her calm[1] while waiting for emergency personnel to extract her from her heavily damaged vehicle. Both Deputy Lanning and Officer Abraham detected the smell of an alcoholic beverage, and Angle admitted she had been drinking prior to the accident.

[¶5.] Once Angle was removed from her SUV, she was transported to the Madison Regional Hospital. Officer Abraham followed in his patrol vehicle while Deputy Lanning obtained a search warrant authorizing officers to obtain a sample of Angle's blood. A sample taken at 7:34 p.m. —two hours after the accident— subsequently revealed a blood alcohol content (BAC) of .243. A second blood test obtained at 8:43 p.m. showed a BAC of .220.

[¶6.] At 9:05 p.m., Deputy Lanning requested an interview with Angle at the hospital. A short while before, Lake County Sheriff Tim Walburg had told Deputy Lanning to provide Angle with *Miranda*[2] warnings, and if she waived her rights, to "get as much information as he could." Deputy Lanning did not have with him a preprinted card containing the *Miranda* warnings often carried by law enforcement officers. *See State v. Willingham*, 2019 S.D. 55, ¶ 36, 933 N.W.2d 619, 628 (noting officer's use of preprinted *Miranda* warning card to advise suspect). Working from memory, he had the following exchange with Angle:

---

1.      Officer Abraham testified that Angle was "battered and bloody." Video footage and audio recorded by Officer Abraham's body camera system also shows Angle was extremely upset that one of two dogs riding with her in the SUV was missing.

2.      *See Miranda v. Arizona*, 384 U.S. 436, 444-45, 86 S. Ct. 1602, 1612, 16 L. Ed. 2d 694 (1996).

> **Deputy Lanning:** OK. You have the continuing right to remain silent and stop questioning at any time. Anything you say could be used against you in the court of law. You have the right to have an attorney present. Ok. You have the right to stop questioning at any time. So, what I am saying is you don't have to talk to me if you don't want to. Do you understand that?
>
> **Angle**: Yea.
>
> **Deputy Lanning:** Ok are you ok with answering some questions tonight?
>
> **Angle:** Umm, depends on your questions.
>
> **Deputy Lanning**: Ok.
>
> **Angle:** Then I'll decide.
>
> **Deputy Lanning**: If there are some that you don't want to answer, then just tell me. You know, just give me the common courtesy to say hey I don't want to answer that, and I'll respect that.
>
> **Angle**: Yeah uh huh.

[¶7.]     During the interview, Angle admitted to drinking before the accident and to being distracted by her dogs in the backseat. After the interview, Sheriff Walburg spoke with Angle and advised her that Birgen had been killed as a result of the crash. He placed Angle under arrest and transported her to the Lake County Jail after she was discharged from the hospital a short time later. A Lake County grand jury returned an indictment charging Angle with one count of vehicular homicide and three counts of driving under the influence under alternative theories. *See* SDCL 22-16-41; SDCL 32-23-1(1); SDCL 32-23-1(2); SDCL 32-23-1(4). She pled not guilty and moved to suppress her statement to Deputy Lanning at the hospital, arguing she was not properly advised of her *Miranda* rights.

[¶8.]     After conducting a hearing, the circuit court denied Angle's motion to suppress. The court recognized that Deputy Lanning had provided Angle with three of the four advisories required by *Miranda*, omitting the right to appointed counsel. However, the court concluded that the fact Deputy Lanning advised Angle of her right to have an attorney present sufficiently communicated her separate right to appointed counsel. The court went on to find that Angle voluntarily waived her rights before she was questioned.

[¶9.]     Angle waived her right to a jury trial, and the case was tried to the circuit court on October 23, 2019. Prior to trial, the parties entered into several stipulations regarding the admission of evidence. Included among these was a stipulation of fact, which established that the December 17 crash was the cause of Birgen's death. A separate stipulation acknowledged that the two blood samples taken from Angle had produced BAC results of .242 approximately two hours after the crash and .220 three hours after the crash. In addition, an affidavit from a state chemist was admitted without objection and contained the expert opinion that Angle's BAC was approximately .274 at the time of the accident.

[¶10.]     As part of its case-in-chief, the State also provided expert testimony from South Dakota Highway Patrol Trooper Jeremy Gacke, who is a certified accident reconstructionist. Citing the findings of his investigation, Trooper Gacke testified that Angle was traveling approximately 85 miles per hour, 20 miles per hour over the speed limit, at the time she collided with Birgen's pickup. In Trooper Gacke's opinion, Angle did not apply her brakes before the collision, which, he

concluded, occurred when she crossed the centerline and struck the pickup halfway inside the eastbound lane of Highway 34.

[¶11.] At the close of the State's case, Angle moved for a judgment of acquittal, arguing that the State had not proven that she was under the influence of alcohol at the time of the accident. The court denied Angle's motion and found her guilty of vehicular homicide and driving under the influence (DUI) under SDCL 32-23-1(1), which states that: "[n]o person may drive or be in actual physical control of any vehicle while: (1) There is 0.08 percent or more by weight of alcohol in that person's blood as shown by chemical analysis of that person's breath, blood, or other bodily substance[.]"[3]

[¶12.] For the vehicular homicide conviction, the circuit court sentenced Angle to fifteen years in the penitentiary with credit for 350 days served and two years suspended upon certain conditions. The court also sentenced Angle to 350 days in county jail for Angle's DUI-first offense conviction with credit for 350 days served.

[¶13.] Angle presents two arguments for our review:

1. Whether the circuit court erred when it denied her motion to suppress her statement at the hospital.

---

3. The circuit court did not return a verdict on the alternative charges alleging Angle violated SDCL 32-23-1 by driving or being in actual physical control of a vehicle while she was "[u]nder the influence of an alcoholic beverage, marijuana, or any controlled substance not obtained pursuant to a valid prescription . . ." or while she was "[u]nder the combined influence of an alcoholic beverage and or any controlled drug or substance obtained pursuant to a valid prescription, or any other substance, to a degree which renders the person incapable of safely driving[.]" *See* SDCL 32-23-1(2), (4).

2.   Whether the circuit court erred when it denied her motion for a judgment of acquittal.

## Analysis

### *Miranda Warnings*

[¶14.]   Requiring law enforcement officers to provide *Miranda* warnings before custodial interrogation protects an individual's constitutional privileges "against self-incrimination and [the] right to retained or appointed counsel." *Miranda*, 384 U.S. at 475, 86 S. Ct. at 1628.   We review "the denial of a motion to suppress based on the alleged violation of a constitutionally protected right as a question of law by applying the de novo standard of review." *Willingham*, 2019 S.D. 55, ¶ 21, 933 N.W.2d at 625 (quoting *State v. Rolfe*, 2018 S.D. 86, ¶ 10, 921 N.W.2d 706, 709).

[¶15.]   Whenever a defendant is subject to custodial interrogation,[4] officers must give four basic warnings: "[1] the right to remain silent, [2] that anything [she] says can be against [her] in a court of law, [3] that [she] has the right to the presence of an attorney, [4] and that if [she] cannot afford an attorney one will be appointed for [her] prior to any questioning if [she] so desires." *Miranda*, 384 U.S.

---

4.   The State has not argued that Angle was not in custody when she was interviewed at the hospital, and we express no opinion on the custody issue. However, we are aware of several decisions in which other courts have held, under particular circumstances, that a defendant was not considered in custody when hospitalized. *See United States v. New*, 491 F.3d 369, 373-74 (8th Cir. 2007); *United States v. Jamison*, 509 F.3d 623, 628-31 (4th Cir. 2007); *United States v. Robertson*, 19 F.3d 1318, 1321 (10th Cir 1994); *United States v. Martin*, 781 F.2d 671, 673 (9th Cir. 1985); *People v. Theander*, 295 P.3d 960, 966-69 (Colo. 2013); *State v. Rogers*, 848 N.W.2d 257, 262-65 (N.D. 2014).

at 479, 86 S. Ct. at 1630.  The requirement to provide a complete statement of

*Miranda* warnings, including notice of the right to appointed counsel, is unyielding:

> In order fully to apprise a person interrogated of the extent of [her] rights under this system then, it is necessary to warn [her] *not only that [she] has the right to consult with an attorney, but also that if [she] is indigent a lawyer will be appointed to represent [her].*  Without this additional warning, the admonition of the right to consult with counsel would often be understood as meaning only that [she] can consult with a lawyer if [she] has one or has the funds to obtain one.  The warning of a right to counsel would be hollow if not couched in terms that would convey to the indigent—the person most often subjected to interrogation—the knowledge that [she] too has a right to have counsel present.

*Id.* at 473, 86 S. Ct. at 1627 (emphasis added).

[¶16.]     This is not to say, however, that the *Miranda* rule requires rigid

conformity to a prescribed script or "talismanic incantation."  *California v. Prysock*,

453 U.S. 355, 360, 101 S. Ct. 2806, 2809, 69 L. Ed. 2d 696 (1981); *see also*

*Willingham*, 2019 S.D. 55, ¶ 35, 933 N.W.2d at 628 ("[T]he words of *Miranda* do not

constitute a ritualistic formula which must be repeated without variation in order

to be effective.  Words which convey the substance of the warning along with the

required information are sufficient." (quoting *Evans v. Swenson*, 455 F.2d 291, 295

(8th Cir. 1972))).  Instead, either the warnings themselves or their functional

equivalent will suffice for *Miranda* compliance.  *Prysock*, 453 U.S. at 360, 101 S. Ct.

at 2809 (quoting *Rhode Island v. Innis*, 446 U.S. 291, 297, 100 S. Ct. 1682, 1688, 64

L. Ed. 2d 297 (1980)).

> In determining whether police officers adequately conveyed the four warnings, we have said, reviewing courts are not required to examine the words employed as if construing a will or defining the terms of an easement.  The inquiry is simply

> whether the warnings reasonably conve[y] to [a suspect] [her] rights as required by *Miranda.*

*State v. Ralios*, 2010 S.D. 43, ¶ 25, 783 N.W.2d 647, 655 (quoting *Florida v. Powell*, 559 U.S. 50, 130 S. Ct. 1195, 1204, 175 L. Ed. 2d 1009 (2010)); *see also Duckworth v. Eagan*, 492 U.S. 195, 203, 109 S. Ct. 2875, 2880, 106 L. Ed. 2d 166 (1989).

[¶17.]      Here, the circuit court correctly determined that "three of the four tenets of *Miranda* were explicitly provided to [Angle]." The court acknowledged that Deputy Lanning did not inform Angle of her right to have an attorney appointed prior to questioning.[5] However, the court reasoned that Deputy Lanning had, nevertheless, "reasonably conveyed to Defendant her rights as required by *Miranda*" because, while not "explicitly told *how* she could get the advice of an attorney, she was told that she could have one present; therefore, the important part of the right was fulfilled." We are unable to accept this view.

[¶18.]      The circuit court's determination effectively eliminated the need to advise individuals subject to custodial questioning that they have a specific right to

---

5.      Angle also argues that Deputy Lanning's statement describing "the right to have an attorney present" did not comply with *Miranda* because it did not explain that the right applied prior to questioning. Though Deputy Lanning did not use the explicit words, "before questioning," we agree with the circuit court's conclusion that the statement was nevertheless sufficient. Deputy Lanning advised Angle of the right to counsel before he asked her any questions, and he also told her that she could "stop questioning at any time" and "[did] not have to talk to [him]." We believe that the most reasonable interpretation of the advisory is that Angle had the right to have an attorney present prior to answering any of the questions Deputy Lanning was preparing to ask. *See State v. Nave*, 284 Neb. 477, 495, 821 N.W.2d 723, 737 (2012) (holding an officer's statement that the defendant had "the right to consult with a lawyer and have the lawyer with [him] during the questioning," was enough to satisfy *Miranda* because it "impliedly included the right to consult with the lawyer *before* the questioning." (emphasis added)).

*appointed* counsel. As a consequence, the court's rationale allows the distinct right-to-counsel notice to fulfill its own *Miranda* requirement and also implicitly communicate the separate right to appointed counsel. However, advising a defendant of her right to have an attorney present during questioning is not the functional equivalent of telling her she has the right to appointed counsel.[6] We have reviewed Deputy Lanning's extemporized recitation of the *Miranda* warnings carefully, and we cannot discern anything else in his advisory that would, in some way, provide Angle with notice of her right to appointed counsel. Notice of the right was, simply put, "entirely omitted." *See Powell*, 559 U.S. at 73, 130 S. Ct. at 1211 (Stevens, J., dissenting); *Cf. Duckworth*, 492 U.S. at 203-04, 109 S. Ct. at 2880 (holding that *Miranda* warnings were adequate when suspect was at least informed that an attorney would be appointed for him "if and when [he] goes[s] to court").

[¶19.] A failure to provide adequate *Miranda* warnings requires suppression. "The *Miranda* exclusionary rule . . . serves the Fifth Amendment and sweeps more broadly than the Fifth Amendment itself." *Oregon v. Elstad*, 470 U.S. 298, 306, 105 S. Ct. 1285, 1291-92, 84 L. Ed. 2d 222 (1985). Because of this, suppression may be required in the absence of a Fifth Amendment violation, and even "unwarned

---

6.      In *Miranda*, the Supreme Court explained that this requirement "does not mean, as some have suggested, that each police station must have a 'station house lawyer' present at all times to advise prisoners." 348 U.S. at 474, 86 S. Ct. at 1608. However, the prophylactic notice of the right to appointed counsel means what it says—officers seeking to question a person in custody must advise her of the right to have an attorney appointed if she cannot afford one. In the event "authorities conclude that they will not provide counsel during a reasonable period of time in which investigation in the field is carried out, they may refrain from doing so without violating the person's Fifth Amendment privilege *so long as they do not question [her]* during that time." *Id.* (emphasis added).

statements that are otherwise voluntary . . . must nevertheless be excluded from evidence under *Miranda*."[7] *Id.* The circuit court should have granted Angle's motion to suppress.

[¶20.]     This does not require us to reverse Angle's convictions, however. We believe the evidence against Angle was overwhelming even in the absence of the admissions she made at the hospital, and the error was unquestionably harmless. *See State v. Lewandowski*, 2019 S.D. 2, ¶ 34, 921 N.W.2d 915, 924 (holding that "even if the statements had been unlawfully obtained" the error was harmless given independent overwhelming evidence to support defendant's convictions).

[¶21.]     Here, even without Angle's admission at the hospital that she had been drinking and was distracted by her dogs, the State introduced evidence at trial from the truck driver who witnessed the accident. Based upon his personal observations of the entire accident sequence of events, he testified that Angle was traveling at a high rate of speed and crossed over the center line into Birgen's lane where she collided with him. The truck driver also saw Birgen ejected from his truck and land violently on the road surface. In addition, Angle's boyfriend testified that she had filled a "to go" mug with whiskey and Diet Coke before leaving his house, and the state chemist's affidavit expressed his unrebutted opinion that Angle's BAC at the time of the accident was likely .274.

---

7.     An exception to inadmissibility exists where the statement was given voluntarily and is used to impeach the defendant's testimony. *State v. Tapio*, 459 N.W.2d 406, 411 (S.D. 1990) (citing *Harris v. New York*, 401 U.S. 222, 91 S. Ct. 643, 28 L. Ed. 2d 1 (1971)).

[¶22.] Still too, there is Angle's separate admission that she had been drinking made to Deputy Lanning at the scene of the crash while she was waiting to be removed from her vehicle. Both Deputy Lanning and Officer Abraham testified that they smelled the odor of alcoholic beverages, and Deputy Lanning's question to Angle about drinking, though unwarned, would not have triggered the need for *Miranda* warnings because Angle was indisputably not in custody. Angle may have been unable to move freely as she waited for emergency personnel to extricate her from her damaged vehicle, but that was a consequence of the collision—not action by law enforcement officers. *See California v. Beheler*, 463 U.S. 1121, 1123, 103 S. Ct. 3517, 3519, 77 L. Ed. 2d 1275 (1983) (quoting *Miranda*, 384 U.S. at 444, 86 S. Ct. at 1612) ("by custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way").[8]

### Sufficiency of the Evidence

[¶23.] "Denial of a motion for judgment of acquittal is reviewed de novo." *State v. Ware*, 2020 S.D. 20, ¶ 12, 942 N.W.2d 269, 272 (quoting *State v. Traversie*, 2016 S.D. 19, ¶ 9, 877 N.W.2d 327, 330). "On appeal, 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution,

---

8. Though we think it best to avoid the fact-bound discussion about whether Angle was in custody while she was at the hospital given the State's acquiescence, *see supra* n.4, we feel differently about the question of custody immediately after the accident. In our view, the record and the undisputed circumstances of the crash lead to the certain conclusion that Angle was not in police custody at the scene of the crash. In addition, it appears the motion to suppress was directed at the hospital interview only. Though the motion itself was stated broadly, Angle's brief to the circuit court focused only on the hospital interview and the incomplete warnings.

any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *State v. Martin*, 2015 S.D. 2, ¶ 13, 859 N.W.2d 600, 606).

[¶24.] The offense of vehicular homicide includes the following essential elements:

> 1. That the defendant at the time and place . . . operated or drove a motor vehicle in a negligent manner.
>
> 2. That the defendant at the time and place was under the influence of an alcoholic beverage.
>
> 3. That the negligent operation or driving was a proximate cause of the death . . . .
>
> 4. That the defendant did so without a design to effect the death . . . .

*State v. Lamont*, 2001 S.D. 92, ¶ 14, 631 N.W.2d 603, 608. *See also* SDCL 22-16-41.

[¶25.] The theory of driving while under the influence for which Angle was convicted required proof that she was "in actual physical control of any vehicle while . . . [t]here is 0.08 percent or more by weight of alcohol in . . . [her] blood as shown by chemical analysis . . . ." SDCL 32-23-1(1).

[¶26.] As discussed above, even without Angle's admissions to Deputy Lanning at the hospital, the evidence supports her convictions, and the circuit court correctly denied her motion for judgment of acquittal. The parties' partial stipulation of facts established that Angle was driving her SUV at the time of the fatal collision and that Birgen died as a result of the injuries he sustained in the crash. Beyond this, the State's accident reconstructionist provided unrebutted expert testimony that Angle was driving 20 miles per hour over the posted speed limit and crossed the center line of Highway 34 to approximately the middle of the

eastbound lane before colliding with Birgen's vehicle without applying her brakes. We have no difficulty accepting this as sufficient proof that Angle was negligent and that her negligence was the proximate cause of Birgen's death.

[¶27.]     Also undisputed are the expert opinions of the state chemist admitted by stipulation. The parties admitted that blood samples taken from Angle two and three hours after the crash yielded respective results of .242 and .220 alcohol by weight. In addition, the chemist's affidavit was admitted without objection and included his expert opinion that Angle's blood alcohol content was .274 at the time of the collision. The opinion, the chemist stated, was based on standard absorption rates and the assumption that Angle was in the post-absorptive phase of alcohol metabolization, meaning the alcohol was no longer in her stomach and had been absorbed into her blood. There was no evidence to suggest that either of these assumptions was unsound or rendered the ultimate opinion unreliable.[9]

[¶28.]     Further, the circuit court focused on the element of SDCL 32-23-1(1), which simply requires proof that Angle's BAC *equaled or exceeded* .08. It was, therefore, unnecessary to establish the precise level where, as here, the court was convinced beyond a reasonable doubt that the State's evidence established at least the minimum BAC level required by SDCL 32-23-1(1). Because the evidence is

---

9.     Angle's contrary argument is not sustainable. The chemist's opinion was the *only* evidence bearing upon Angle's BAC at the time of the fatal crash. It was admitted by stipulation and without any challenge to its underlying bases. Angle's claim that the opinion was, nevertheless, unsound would require us to act on our own to consider the exercise of the circuit court's discretion to allow the stipulated opinion or reweigh the strength of the opinion. Given our role as a reviewing court, we are not inclined to do either.

sufficient to support the court's determination in this regard, we must affirm its decision to deny the motion for judgment of acquittal.

## Conclusion

[¶29.] Although the circuit court erred by denying Angle's suppression motion, Deputy Lanning's failure to advise her that she had the right to appointed counsel before questioning her at the hospital was harmless, given the overwhelming evidence against her. The circuit court did not err when it denied Angle's motion for acquittal, finding sufficient evidence to sustain her convictions for vehicular homicide and driving under the influence. We affirm.

[¶30.] JENSEN, Chief Justice, and KERN and DEVANEY, Justices, and GILBERTSON, Retired Chief Justice, concur.

[¶31.] MYREN, Justice, having not been a member of the Court at the time this action was submitted to the Court, did not participate.